**Gerald N. PELLEGRINI,**
**Plaintiff–Appellant,**

v.

**ANALOG DEVICES, INC.,**
**Defendant–Appellee.**

No. 04–1054.

United States Court of Appeals,
Federal Circuit.

DECIDED: July 8, 2004.

Gerald N. Pellegrini, Worcester Electromagnetics Partnership, of Wellesley, MA, pro se.

Wayne L. Stoner, Hale and Dorr, of Boston, MA, for defendant-appellee. Of counsel was Richard W. O'Neill.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Gerald Pellegrini appeals from the decision of the United States District Court for the District of Massachusetts granting partial summary judgment in favor of Analog Devices, Inc. ("Analog") in a patent infringement suit. *Pellegrini v. Analog Devices, Inc.*, No. 02–11562–RWZ, 2003 WL 21026797 (D.Mass. May 7, 2003) (Memorandum of Decision). Because there are no genuine issues of material fact in dispute and Analog is entitled to partial judgment as a matter of law, we affirm.

## BACKGROUND

Pellegrini is the sole inventor and owner of U.S. Patent 4,651,069, directed to brushless motor drive circuits. Analog develops and fabricates integrated circuit chips, including a line of chips called "ADMC" chips. In August 2002, Pellegrini sued Analog, alleging direct infringement and inducement of infringement of the '069 patent, contending that certain claims of the '069 patent read on the combination of ADMC chips and other components in brushless motors. Both parties moved for summary judgment.

It is undisputed that the ADMC chips are manufactured exclusively outside of the United States.[1] It is also undisputed that most of those chips are sold and shipped to customers outside the United States.[2] Noting that the U.S. patent laws do not have extraterritorial effect, the district court granted Analog's motion for partial summary judgment with respect to products containing those chips (hereinafter, "ADMC products") sold and shipped to non-U.S. customers, and the court denied Pellegrini's motion. The district court rejected Pellegrini's argument that, because Analog's headquarters are located in the United States and instructions for the production and disposition of the ADMC chips emanate from the United States, the chips should be regarded as having been "supplie[d] or cause[d] to be supplied in or from the United States" and Analog should be liable as an infringer under 35 U.S.C. § 271(f)(1). Accordingly, the district court entered separate and final judgment in Analog's favor pursuant to Fed.R.Civ.P. 54(b) with respect to Pellegrini's claim under § 271(f)(1).[3]

Pellegrini timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is enti-

tled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1353 (Fed.Cir. 1998). We review a district court's grant of summary judgment *de novo*, reapplying the summary judgment standard. *Conroy v. Reebok Int'l*, 14 F.3d 1570, 1575 (Fed. Cir.1994). Additionally, "[w]hen evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed.Cir.2001). In that process, we draw all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We also review the district court's statutory construction *de novo*. *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1370 (Fed.Cir.2003).

■ This case presents the question whether components that are manufactured outside the United States and never physically shipped to or from the United States may nonetheless be "supplie[d] or cause[d] to be supplied in or from the United States" within the meaning of 35 U.S.C. § 271(f)(1) if those components are designed within the United States and the instructions for their manufacture and disposition are transmitted from within the United States. This is a matter of first

1. The ADMC chips are manufactured by Analog in Ireland and by two independent contractors hired by Analog in Taiwan.

2. Analog concedes that it has imported a small number of ADMC chips into the United States, *e.g.*, for testing purposes, but those chips are not the subject of the summary judgment on appeal.

3. The district court granted partial summary judgment under Rule 54(b) only on the question whether Analog's accused ADMC chips

manufactured outside the United States and never shipped to or from the United States infringed the '069 patent as a matter of law. Because that is the only issue decided by the court and appealed to us, we state no opinion as to the viability of Pellegrini's remaining causes of action set forth in his complaint, including his claims that Analog induced its customers to infringe the '069 patent and directly infringed the '069 patent by having imported the ADMC chips for testing.

impression for this court. According to § 271(f)(1),

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the patent if such combination occurred within the United States shall be liable as an infringer.

35 U.S.C. § 271(f)(1) (2000). Section 271(f) was enacted in the wake of the United States Supreme Court's decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), in which the Court acknowledged that unauthorized manufacturers of patented products could avoid liability for infringement under the then-existing law by manufacturing the unassembled components of those products in the United States and then shipping them outside the United States for assembly. Congress enacted § 271(f) in order to close that loophole. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 n. 2 (Fed.Cir. 2000). As explained in the Congressional Record:

> Section 101 [of the Bill] makes two major changes in the patent law in order to avoid encouraging manufacturers outside the United States.
>
> . . . .
>
> [Section 271(f)] will prevent copiers from avoiding U.S. patents by supplying components of a patented product in this country so that the assembly of the components may be completed abroad. This proposal responds to the ... decision in *Deepsouth* ... concerning the need for a legislative solution to close a loophole in patent law.

130 Cong. Rec. H10525 (1984).

On appeal, Pellegrini asserts that the district court failed to consider, or at least did not address, certain relevant facts and that the court misapplied and incorrectly interpreted controlling case law. In his first argument, Pellegrini contends that the record shows that Analog is incorporated in the United States and has executive, marketing, and product line responsibilities for ADMC products; that Analog conceived and designed the ADMC products; that Analog is the exclusive manufacturer of ADMC products; that Analog makes all development and production decisions for ADMC products; that Analog is responsible for the fabrication, assembly, and testing of ADMC products; that ADMC uses, subcontracts with, and pays others for the express purpose of the proprietary fabrication, assembly, and testing of ADMC products; that Analog's ADMC products are capable of motor control; that Analog sets budgetary pricing and receives payment for ADMC products sold worldwide; and that Analog receives purchase orders from and invoices customers worldwide for ADMC products and increases production levels for ADMC products in response to those purchase orders. According to Pellegrini, these facts satisfy the "supplies" requirement of § 271(f)(1) because they evidence acts of infringement occurring inside the United States.

Analog responds that Pellegrini's facts are not supported by the record, but, even if they are credited, they are irrelevant because they do not demonstrate that the accused ADMC chips at issue were "supplied in or from the United States." According to Analog, § 271(f)(1) is simply inapplicable to products manufactured outside the United States and never shipped to or from the United States.

Pellegrini then argues that Analog exports its ADMC products, regardless of their origin, from the United States. That contention is based on the fact that Analog apparently includes the following boilerplate statement on all of its commercial invoices, even for shipments that originate outside the United States:

These commodities, technology, or software were exported from the United States for ultimate destination to (Enter Countries), in accordance with Export Administration Regulations. Diversion contrary to U.S. Law prohibited.

Above listed products may be assembled in one or more of the following countries, HONG KONG, INDONESIA, IRELAND, KOREA, PHILIPPINES, TAIWAN, THAILAND, MALAYSIA, or SINGAPORE.

Pellegrini does not contend that Analog's ADMC chips are in fact physically exported from the United States. Rather, he points out that Analog explained to the district court that the above statement is included to demonstrate compliance with U.S. export laws, and he argues that Analog should not be allowed to enjoy the benefit of such a declaration with respect to U.S. export laws while simultaneously escaping liability under U.S. patent laws.

Analog responds that the above-quoted boilerplate language is included in its invoices only out of an abundance of caution and does not indicate whether the products were ever·physically present in the United States or if they were shipped to or from the United States. Analog points out that the U.S. Supreme Court explained nearly 150 years ago in *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 15 L.Ed. 595 (1857), that the U.S. patent laws "do not, and· were not intended to, operate beyond the limits of the United States." *Id.* at 195; *see also Int'l Rectifier Corp. v. Samsung Elecs. Co.,* 361 F.3d 1355, 1360 (Fed.Cir.

2004). Analog also points out that Pellegrini made a deliberate decision not to seek foreign patent protection for the invention claimed in the '069 patent, and he is bound by the obvious and foreseeable consequences of that decision.

■ We agree with Analog that § 271(f)(1) does not apply to the facts of this case. First, § 271(f) is clear on its face. It applies only where components of a patent invention are physically present in the United States and then either sold or exported "in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the patent if such combination occurred within the United States." Secondly, as Pellegrini himself recognizes, we explained in *North American Philips v. American Vending Sales, Inc.,* 35 F.3d 1576 (Fed.Cir.1994), that "the 'tort' of patent infringement occurs where the offending act [making, using, selling, offering for sale, or importing] is committed and not where the injury is felt." *Id.* at 1579. There is no dispute that the ADMC chips are not made, used, sold, or offered for sale in the United States. The plain language of § 271(f)(1) focuses on the location of the accused components, not the accused infringer. Pellegrini contends that it is irrelevant that the chips within the scope of the partial summary judgment never enter the United States, because to impose a location requirement would lead to a "seemingly contradictory construction of § 271(f)(1)." According to Pellegrini, "it is difficult to understand how the combination of such components outside the United States can occur if they are inside the United States." However, the language of § 271(f) clearly contemplates that there must be an intervening sale or exportation; there can be no liability under § 271(f)(1) unless components are shipped from the United States for assembly.

As stated above, Analog does not make, use, sell, or offer to sell ADMC products in the United States, and it does not import ADMC products into the United States. Analog also does not supply ADMC chips in or from the United States, and does not cause ADMC chips to be supplied in or from the United States. Thus, 35 U.S.C. § 271(f)(1) is inapplicable. "[S]uppl[ying] or caus[ing] to be supplied" in § 271(f)(1) clearly refers to physical supply of components, not simply to the supply of instructions or corporate oversight. In other words, although Analog may be giving instructions from the United States that cause the components of the patented invention to be supplied, it is undisputed that those components are not being supplied in or from the United States.

Moreover, the fact that Analog notes on its invoices that its "commodities" were exported from the United States does not stand up against the uncontested fact that no ADMC chips were exported from the United States. Compliance with the export laws is not an issue before this court.

Pellegrini further argues that *Crowell v. Baker Oil Tools*, 143 F.2d 1003 (9th Cir. 1944), demonstrates that liability as a "manufacturer" does not require the performance of the actual physical manufacturing. Although Pellegrini's statement is correct insofar as *Crowell* held that one cannot escape liability for infringement as a manufacturer of infringing products simply by employing an agent or independent contractor to carry out the actual physical manufacturing, *id.* at 1004 ("It is obvious that one may infringe a patent if he employ an agent for that purpose or have the offending articles manufactured for him by a independent contractor."), there is no suggestion in *Crowell* that the manufacturing need not nonetheless be carried out in the United States. As stated above, Analog's defense is not based on the use of a

contractor, but rather on extraterritorial manufacture.

■ Finally, Pellegrini contends that the district court's reliance on our decision in *Rotec* was incorrect and misplaced. Pellegrini points out that in *Rotec*, no U.S. defendant was alleged to be the manufacturer or seller of the accused components, whereas it is undisputed that Analog is the exclusive manufacturer of the ADMC products sold worldwide or that Analog invoices and receives payment for those products. Although factually correct, that distinction is legally unavailing. The present case is analogous to *Rotec* in the only sense that matters here: Analog's ADMC chips within the scope of the summary judgment, like the crane and conveyor belt system components at issue in *Rotec*, are not made in, used in, sold in, offered for sale in, or imported into the United States, 215 F.3d at 1247, 1256, and they are therefore outside of the reach of U.S. patent laws. As in *Rotec*, the present record "contains no evidence that any Defendant 'supplied or caused to supply' any component of a patented invention in or from the United States." *Id.* at 1256. Pellegrini speculates that "had there been admissible evidence to show an 'offer for sale' occurring in the United States [in *Rotec*], the Court would have judged otherwise." Be that as it may, there is no evidence of record here that Analog has offered to sell the ADMC chips domestically. Although Analog receives purchase orders, has responsibility for worldwide manufacturing and sales of ADMC products, and has marketing and product line responsibilities for ADMC products, there is no evidence of record that any of that manufacturing occurs in the United States or that Analog offers to sell those products in the United States. As the Supreme Court explained in *Dowagiac Mfg. Co. v. Minn. Moline Plow Co.*, 235 U.S. 641, 35 S.Ct. 221, 59

L.Ed. 398 (1915), "the right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country." *Id.* at 650, 35 S.Ct. 221.

We have considered Pellegrini's other arguments and find them unpersuasive.

## CONCLUSION

Because there is no genuine issue of material fact and Analog is entitled to judgment as a matter of law with respect to the ADMC products that are not manufactured in the United States and are never shipped to or from the United States, the decision of the district court is

*AFFIRMED.*