# United States Court of Appeals for the Federal Circuit

2008-1130

COOPER TECHNOLOGIES COMPANY,

Plaintiff-Appellant,

v.

Jon W. Dudas, DIRECTOR,
UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee,

and

THOMAS & BETTS CORPORATION,

Defendant-Appellee.


R. Ted Cruz, Morgan, Lewis & Bockius L.L.P., of Houston, Texas, argued for plaintiff-appellant. On the brief were Paul E. Kreiger and James L. Beebe. Of counsel was Robert S. Harrell, Fulbright & Jaworski L.L.P., of Houston, Texas.

Nathan K. Kelley, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for defendant-appellee, Jon W. Dudas, Director, United States Patent and Trademark Office. With him on the brief were William LaMarca and Raymond T. Chen, Associate Solicitors.

Alan M. Fisch, Kaye Scholer LLP, of Washington, DC, argued for defendant-appellee Thomas & Betts Corporation. With him on the brief were Jason F. Hoffman, Coke M. Stewart, R. William Sigler, and Kevin W. Jakel.

Appealed from: United States District Court for the Eastern District of Virginia

Judge Leonie M. Brinkema

# United States Court of Appeals for the Federal Circuit

2008-1130

COOPER TECHNOLOGIES COMPANY,

Plaintiff-Appellant,

v.

Jon W. Dudas, DIRECTOR, UNITED STATES PATENT AND TRADEMARK OFFICE,

Defendant-Appellee,

and

THOMAS & BETTS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Virginia in case no. 1:07-CV-853, Judge Leonie M. Brinkema.

_____

DECIDED: August 19, 2008

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

In this case, we are called upon to determine which patents are subject to inter partes reexamination. Congress established the inter partes reexamination procedure as part of the American Inventors Protection Act of 1999, Pub. L. No. 106-113, §§ 4001-4808, 113 Stat. 1501, 1501A-552 to -591 ("AIPA"). Pursuant to section 4608 of the AIPA, the inter partes reexamination procedure is available for "any patent that issues from an <u>original application</u> filed in the United States on or after" November 29, 1999—the date of the enactment of the AIPA. <u>Id.</u> § 4608, 113 Stat. at 1501A-572 (emphasis

added). The United States Patent and Trademark Office ("Patent Office") has interpreted the phrase "original application" in section 4608 "to encompass utility, plant and design applications, including first filed applications, continuations, divisionals, continuations-in-part, continued prosecution applications and the national stage phase of international applications." Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,756, 76,757 (Dec. 7, 2000). Appellant contends that, contrary to the determination of the Patent Office and the district court, "original application" refers to the first application in a chain of applications from which priority is claimed.

We conclude that the Patent Office's interpretation is reasonable and is entitled to <u>Chevron</u> deference. <u>See</u> <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). For this reason, we affirm the judgment of the district court.

## I. BACKGROUND

The AIPA created the inter partes reexamination procedure to allow third parties to have an expanded role in the reexamination of issued patents. <u>See</u> Optional Inter Partes Reexamination Procedure Act of 1999, Pub. L. No. 106-113, §§ 4601-08, 113 Stat. at 1501A-567 to -572 (codified as amended at 35 U.S.C. §§ 311-18); <u>see also</u> 145 Cong. Rec. S13259 (Oct. 27, 1999) (statement of Sen. Hatch) (remarking that AIPA was designed to "make reexamination a viable, less-costly alternative to patent litigation by giving third-party requesters the option of inter-partes reexamination procedures" in which they are "afforded an expanded, although still limited, role in the reexamination process"). Unlike an ex parte reexamination proceeding, an inter partes reexamination proceeding allows the third-party requester to participate in the reexamination by submitting written comments addressing issues raised in the patent owner's response to

an office action, appealing a decision in favor of patentability, and participating as a party to an appeal taken by the patent owner.  See generally 35 U.S.C. §§ 314-15 (2000).

The inter partes reexamination subtitle of the AIPA includes a provision establishing its effective date:

> Subject to subsection (b), this subtitle and the amendments made by this subtitle shall take effect on the date of the enactment of this Act and shall apply to <u>any patent that issues from an original application</u> filed in the United States on or after that date.

AIPA § 4608, 113 Stat. at 1501A-572 (emphasis added).[1]  The AIPA was enacted on November 29, 1999.  Id., 113 Stat. at 1501.

On April 6, 2000, the Patent Office published a notice of proposed rulemaking concerning the Patent Office's implementation of inter partes reexamination proceedings.  See Rules To Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 18,154, 18,154 (Apr. 6, 2000).  In that notice, the Patent Office acknowledged that determining "[t]he effective date of the statute with respect to the optional inter partes reexamination proceedings . . . is complex" and stated that "for inter partes reexaminations, the effective date language (in section 4608 of S. 1948) limits the applicability of the new inter partes reexamination Chapter 31 of 35 U.S.C. . . . to any patent that issues from an original application filed in the United States on or after November 29, 1999."  Id. at 18,155.  In its proposed rules, the Patent Office also proposed adding "Subpart H--Inter Partes Reexamination of Patents."  Id. at 18,177.  Included in that subsection was proposed regulation 37 C.F.R. § 1.913, which read:

---

[1]  Subsection (b) of section 4608 contains an exception to the effective date provision that delays by one year the implementation of fees for unintentionally delayed response by a patent owner in a reexamination proceeding.  See AIPA §§ 4605(a), 4608(b), 113 Stat. at 1501A-570, -572.  That exception is not relevant here.

Except as provided for in §1.907, any person other than the patent owner or its privies may, at any time during the period of enforceability of a patent which issued from an original application filed in the United States on or after November 29, 1999, file a request for inter partes reexamination by the Office of any claim of the patent on the basis of prior art patents or printed publications cited under §1.501.

Id. at 18,178 (emphases added).

Five days later, the Patent Office published a notice in its Official Gazette interpreting the term "original application" as used in the AIPA. The notice stated:

The phrase "original application" is interpreted to encompass utility, plant and design applications, including first filed applications, continuations, divisionals, continuations-in-part, continued prosecution applications (CPAs) and the national stage phase of international applications. This interpretation is consistent with the use of the phrase in 35 U.S.C. 251 and the federal rules pertaining to reexamination. In addition, section 201.04(a) of the Manual of Patent Examination and Procedure (MPEP) defines an original application as ". . . an application which is not a reissue application." Section 201.04(a) of the MPEP further states that "[a]n original application may be a first filing or a continuing application." Therefore, the Optional Inter Partes Reexamination Procedure is applicable to patents which issue from all applications (except for reissues) filed on or after November 29, 1999.

U.S. Patent and Trademark Office, Guidelines Concerning the Implementation of Changes to 35 USC 102(g) and 103(c) and the Interpretation of the Term "Original Application" in the American Inventors Protection Act of 1999, 1233 Official Gazette 54, 56 (Apr. 11, 2000) (alterations in the original).

On December 7, 2000, the Patent Office issued its final rules following its earlier notice of proposed rulemaking. See Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,756, 76,756 (Dec. 7, 2000). In the "Discussion of General Issues Involved" section of those rules, the Patent Office referred to its earlier interpretation in its Official Gazette, and repeated its interpretation of "original application":

The phrase "original application" is interpreted to encompass utility, plant and design applications, including first filed applications, continuations, divisionals, continuations-in-part, continued prosecution applications and the national stage phase of international applications. Therefore, the optional inter partes reexamination [proceeding] . . . is applicable to patents which issue from all applications (except for reissue applications) filed on or after November 29, 1999.

Id. at 76,757. In the section of the notice entitled "Discussion of Specific Rules and Response to Comments," the Patent Office adopted in part a comment that "note[d] that the effective date of the statute with respect to optional inter partes reexamination is complex, and it would be helpful to practitioners and those considering inter partes reexamination if they are clearly advised of what patents are subject to such proceedings." Id. at 76,763. In response to the comment, the Patent Office amended the title of Subpart H (37 C.F.R. §§ 1.902 to 1.997), to add the parenthetical notation "Applicable to any Patent that Issues from an Original Application Filed in the United States on or after November 29, 1999." Id.

In addition, in response to a comment concerning proposed section 1.913, the Patent Office removed the language "other than the patent owner or its privies" from the regulation, "solely for the purpose of more closely following the language of the statute." Id. at 76,765. Responding to the comment, the Patent Office noted that, in its view, the AIPA had "inadvertently" included language that suggested that a patent owner could request inter partes reexamination of its own patent, "even though an inter partes procedure is clearly inappropriate for a reexamination initiated by a patent owner." Id. The Patent Office suggested that this was an error that resulted because the "statute was re-drafted at the last moment." Id. Two years later, Congress amended 35 U.S.C. § 311, making clear that—as the Patent Office had suggested—a patent owner could not request inter partes reexamination of its own patent. See Intellectual Property and

High Technology Technical Amendments Act of 2002, Pub. L. 107-273, § 13202, 116 Stat. 1758, 1901.

Finally, in its 2004 revision to the Manual of Patent Examination and Procedure ("MPEP"), the Patent Office added a chapter addressing inter partes reexamination. See MPEP §§ 2601-2696 (8th ed., 2d rev. 2004). That chapter incorporated the same definition of "original application" as used in the AIPA that the Patent Office had previously set out in its Official Gazette and in the Federal Register. Id. § 2611. The same definition appears in the current text of the MPEP. See MPEP § 2611 (8th ed., 5th rev. 2006).

In this case, Thomas & Betts Corporation ("T&B") requested that the Patent Office initiate inter partes reexamination of U.S. Patent No. 6,984,791 (the "'791 patent"), owned by Cooper Technologies Company ("Cooper"). The '791 patent issued from Application No. 10/412,683 (the "'683 application"), which was filed on April 14, 2003. The '683 application is a continuation of Application No. 10/198,963 (filed July 22, 2002), which is a continuation of Application No. 08/821,760 (filed March 20, 1997), which is a continuation of Application No. 08/262,460 (filed June 20, 1994) (the "'460 application"), which is a continuation-in-part of Application No. 08/038,335 (filed on March 10, 1993). See '791 patent at (63).

The Patent Office granted T&B's request for reexamination and issued an initial office action concluding that all thirty claims of the '791 patent were invalid. Cooper filed a petition with the Patent Office seeking to terminate the inter partes proceeding, arguing that the '791 patent did not issue from an original application filed after November 29, 1999. Instead, Cooper argued, the '683 application for the '791 patent

claimed priority to applications filed before November 29, 1999, and thus the earliest or 'original' application in the chain was filed before that date. Applying its interpretation of "original application," the Patent Office denied Cooper's petition, concluding that the '791 patent issued from the '683 application, and that the '683 application is an "original application" for purposes of the AIPA, even though it is a continuation of and claims priority from an application filed prior to November 29, 1999.

Cooper brought suit against the Director of the Patent Office in the U.S. District Court for the Eastern District of Virginia, challenging the Patent Office's interpretation of the AIPA under the Administrative Procedure Act. 5 U.S.C. § 706 (2000). T&B intervened. On cross-motions for summary judgment, the district court found that the Patent Office's interpretation of "original application" as used in the AIPA was "fully consistent with the term's established meaning in patent law," and that the Patent Office's interpretation was "not inconsistent with other statutory pronouncements." Cooper Techs. Co. v. Dudas, No. 1:07-CV-853, slip op. at 9-10 (E.D. Va. Nov. 30, 2007). The district court avoided the issue of the appropriate level of deference to the Patent Office's construction, reasoning that it was proper to "consider the issues de novo" rather than "tether its analysis to any measure of deference," so as to "avoid an unnecessary legal determination." Id. at 6 n.6. The district court therefore granted summary judgment in favor of the Patent Office, concluding that the '791 patent was properly subject to inter partes reexamination. Id. at 14.

Cooper timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.  DISCUSSION

"We review a district court's grant of summary judgment <u>de novo</u>, reapplying the summary judgment standard."  <u>Pellegrini v. Analog Devices, Inc.</u>, 375 F.3d 1113, 1115 (Fed. Cir. 2004).  Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  We review the district court's statutory construction <u>de novo</u>.  <u>Pellegrini</u>, 375 F.3d at 1115.

### A.  Deference

The district court found it unnecessary to address the appropriate level of deference owed to the Patent Office's interpretation of "original application," because it came to the same interpretation on a <u>de novo</u> review.  <u>Cooper</u>, slip op. at 6 n.6.  For reasons that are explained below, we disagree with the district court's conclusion that "original application" as used in the statute has an "established meaning in patent law." <u>Id.</u> at 9.  We therefore begin our analysis with an examination of the level of deference that the Patent Office's interpretation deserves.

In this case, the Patent Office has argued that its interpretation of section 4608 in the MPEP and <u>Official Gazette</u> are entitled at least to <u>Skidmore</u> deference, and carry additional weight because they are "longstanding."  <u>See</u> Br. for Appellee Jon W. Dudas at 14 (citing <u>Fed. Express Corp. v. Holowecki</u>, 128 S. Ct. 1147, 1156 (2008); <u>Saxbe v. Bustos</u>, 419 U.S. 65, 74 (1974)) ("Patent Office Br."); <u>see generally</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).  Though the Patent Office does not expressly argue that <u>Chevron</u> applies in this case, it has in other cases claimed that it is entitled to <u>Chevron</u> deference when interpreting statutory provisions relating to the conduct of proceedings in the Patent Office.  <u>See</u> Br. for the Appellants at 21, <u>Tafas v. Dudas</u>, No. 2008-1352

(Fed. Cir. July 18, 2008) ("[T]he USPTO is entitled to <u>Chevron</u> deference where, as here, it is engaged in interpreting the scope of its power under Section 2(b)(2) and its other sources of rulemaking authority."); Br. for Amicus Curiae Director of the U.S. Patent & Trademark Office at 22-31, <u>Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.</u>, No. 2008-1016, (Fed. Cir. Dec. 13, 2007) (arguing that Patent Office is entitled to <u>Chevron</u> deference as agency charged with administering statutes in Title 35 concerning revival). Accordingly, we first address whether <u>Chevron</u> deference applies. <u>Cf.</u> <u>Rogers v. Office of Pers. Mgmt.</u>, 87 F.3d 471, 475 (Fed. Cir. 1996) ("We are not bound by concessions of law.").

Under 35 U.S.C. § 2, the Patent Office has authority to establish regulations to "govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2)(A); <u>see also</u> <u>Animal Legal Def. Fund v. Quigg</u>, 932 F.2d 920, 930 (Fed. Cir. 1991). This is "the broadest of the Office's rulemaking powers" and, "[b]y this grant of power we understand Congress to have 'delegated plenary authority over PTO practice . . .' to the Office." <u>Stevens v. Tamai</u>, 366 F.3d 1325, 1333 (Fed. Cir. 2004) (quoting <u>Gerritsen v. Shirai</u>, 979 F.2d 1524, 1527 n.3 (Fed. Cir. 1992)); <u>see also</u> <u>Lacavera v. Dudas</u>, 441 F.3d 1380, 1383 (Fed. Cir. 2006) ("Under 35 U.S.C. § 2(b)(2), the PTO has broad authority to govern the conduct of proceedings before it . . . ."). To comply with section 2(b)(2)(A), a Patent Office rule must be "procedural"—i.e., it must "govern the conduct of proceedings in the Office." In this case, the Patent Office has interpreted a statutory provision—the portion of the AIPA expressly entitled the "Optional Inter Partes Reexamination <u>Procedure</u> Act of 1999"—that created inter partes reexamination and established rules for inter partes reexamination proceedings before the Patent Office.

See Pub. L. No. 106-113, § 4601, 113 Stat. at 1501A-567 (emphasis added). The Patent Office's interpretation of section 4608 thus plainly "govern[s] the conduct of proceedings in the Office" within the meaning of § 2(b)(2)(A).

We have also previously held that 35 U.S.C. § 2(b)(2) does not authorize the Patent Office to issue "substantive" rules. See Merck & Co. v. Kessler, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996). "A rule is 'substantive' when it 'effects a change in existing law or policy' which 'affect[s] individual rights and obligations.'" Animal Legal Def. Fund, 932 F.2d at 927 (quoting Cubanski v. Heckler, 781 F.2d 1421, 1426 (9th Cir.1986), vacated as moot sub nom., Bowen v. Kizer, 485 U.S. 386 (1988)). "In contrast, a rule which merely clarifies or explains existing law or regulations is 'interpretative.'" Id. In this case, the Patent Office's interpretation of "original application" does not effect any change in existing law or policy; rather, it is a prospective clarification of ambiguous statutory language regarding a matter of procedure. It is therefore "interpretive"—rather than "substantive"—under the definitions put forward in Animal Legal Defense Fund. We conclude that the Patent Office had the authority under 35 U.S.C. § 2 to interpret section 4608, because that interpretation both governs the conduct of proceedings in the Patent Office, not matters of substantive patent law, and is a prospective clarification of ambiguous statutory language.

The exercise of the Patent Office's authority under 35 U.S.C. § 2 is subject to its compliance with 5 U.S.C. § 553. See 35 U.S.C. § 2(a)(2)(B). Section 553(b) states that:

> General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply--

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b) (2000).

By its own terms, section 553 does not require formal notice of proposed rulemaking for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." Id. § 553(b)(3)(A); see also id. § 553(d)(2) (exempting "interpretive rules and statements of policy" from publication more than thirty days before its effective date). The Patent Office's interpretation of "original application" was therefore not subject to the formal notice-and-comment requirements of section 553. See also Animal Legal Def. Fund, 932 F.2d at 931 (remarking that not "every action taken by an agency pursuant to statutory authority [is] subject to public notice and comment" because such a requirement "would vitiate the statutory exceptions in section 553(b) itself" including the exception for interpretive rules). Though not required by section 553, the Patent Office's April 6, 2006 notice of proposed rulemaking expressly described the "subjects and issues involved"—namely, the operation of the effective date provision of section 4608. See 65 Fed. Reg. at 18,155, 18,177-78.

Moreover, the Patent Office received and acted on comments directly relating to the "original application" statutory language. See 65 Fed. Reg. at 76,763; see also 5 U.S.C. § 553(c) (requiring that agency "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation").

Because the Patent Office is specifically charged with administering statutory provisions relating to "the conduct of proceedings in the Office," 35 U.S.C. § 2(a)(2)(A), we give Chevron deference to its interpretations of those provisions. See Lacavera, 441 F.3d at 1383 ("Because the PTO is specifically charged with administering this statute, we analyze a challenge to the statutory authority of its regulations under the Chevron framework."); see also Bender v. Dudas, 490 F.3d 1361, 1368 (Fed. Cir. 2007) (applying Chevron framework to Patent Office regulations for the conduct of proceedings in the Patent Office); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425 (Fed. Cir. 1988) (same).

To the extent that there is any question as to whether the Patent Office's interpretation of section 4608—which appears in the Federal Register, but not in the Code of Federal Regulations—is a "regulation" for purposes of 35 U.S.C. § 2(a)(2), resolution of that issue would not affect our analysis. An agency's interpretive rule of a statute relating to matters of procedure, subject to notice and comment if required, need not be published in the Code of Federal Regulations to be entitled to deference. See Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359-60 (Fed. Cir. 2007) (affording Chevron deference to interpretive ruling by Department of Commerce published in Federal Register but not embodied in regulation published in Code of

Federal Regulations); Manufactured Hous. Inst. v. U.S. Envtl. Prot. Agency, 467 F.3d 391, 399 (4th Cir. 2006) (holding that agency's policy statement in Federal Register that was not codified in Code of Federal Regulations was "an equally binding" agency action); see also Sec. Exch. Comm'n v. Phan, 500 F.3d 895, 903-04 & n.10 (9th Cir. 2007) (affording "substantial deference" to Securities and Exchange Commission instruction published in Federal Register, but not codified in Code of Federal Regulations, as "an agency's published interpretation of its own regulations"). But see McLean v. Crabtree, 173 F.3d 1176, 1184 (9th Cir. 1999) (holding that regulation not published in Code of Federal Regulations was "not owed full Chevron deference" but was "owed at least 'some deference' since it is a permissible construction of the statute").

Under the familiar two-step Chevron analysis, "[w]e always first determine 'whether Congress has directly spoken to the precise question at issue.'" Hawkins v. United States, 469 F.3d 993, 1000 (Fed. Cir. 2006) (quoting Chevron, 467 U.S. at 842). "We do so by employing the traditional tools of statutory construction; we examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation." Delverde, SrL v. United States, 202 F.3d 1360, 1363 (Fed. Cir. 2000). "If we find 'that Congress had an intention on the precise question at issue, that intention is the law and must be given effect . . . .'" Hawkins, 469 F.3d at 1000 (quoting Chevron, 467 U.S. at 843 n.9.) If we conclude that "Congress either had no intent on the matter, or that Congress's purpose and intent is unclear," Delverde, 202 F.3d at 1363, then we proceed to step two, in which we ask "whether the agency's

interpretation is based on a permissible construction of the statutory language at issue," Hawkins, 469 F.3d at 1000.

## B. Chevron Step One

We first address whether Congress spoke to the precise question at issue—namely, whether a patent is subject to inter partes reexamination when it results from an application filed after November 29, 1999, that is a continuation of an application filed before November 29, 1999. "As always, the starting point in every case involving construction of a statute is the language itself." Ethicon, 849 F.2d at 1425 (quoting United States v. Hohri, 482 U.S. 64, 69 (1987)) (internal quotation marks omitted). "[W]e 'give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.'" NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1314-15 (Fed. Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)).

Cooper and the Patent Office both concede that the word "original" does not have a single definitive meaning. See Reply Br. of Appellant Cooper Techs. Co. at 4; Patent Office Br. at 37. We agree. Instead, its meaning depends on context. In some contexts, "original" means the absolute first or earliest. See, e.g., 10 Oxford English Dictionary 933-34 (2d ed. 1989) (including definition of "original" as "[o]f or pertaining to the origin, beginning, or earliest stage of something; that belonged at the beginning to the person or thing in question; that existed at first, or has existed from the first; primary, primitive; innate; initial, first, earliest"). But in other contexts, "original" means simply the source—i.e., the "origin"—of something, whether or not it is the first. See, e.g., id. at 934 (including definition of "original" as "[t]hat is the origin or source of something; from which something arises, proceeds, or is derived; primary; originative"). There is

therefore nothing inherent in the word "original" that answers whether an "original" application" must be the first application in a chain, or whether a continuing application that is the direct source of an issued patent can be "original."

The district court found—and the Patent Office argues—that the phrase "original application" has a "settled meaning . . . as used by practitioners in patent law." Cooper, slip op. at 8. Specifically, the district court relied on what it determined was "consistent usage" of the phrase "original application" in the MPEP. See id. at 8-9 (quoting MPEP § 201.04(a) (5th ed. 1983) ("'Original' is used in the patent statute and rules to refer to an application which is not a reissue application. An original application may be a first filing or a continuing application.")).

We disagree with the district court's conclusion that "original application" has any settled meaning in patent law. The district court was correct that section 201.04(a) of the MPEP has consistently defined an "original application" to include continuation applications. See MPEP § 201.04(a) (5th ed., 1983); MPEP § 201.04(a) (8th ed., 5th rev. 2006). But other sections of the MPEP have used the phrase "original application" in a way that suggests exclusion of continuation applications. See, e.g., MPEP § 201 (5th ed. 1983) ("National applications include original, reissue, divisional, continuation, § 1.60, § 1.62, plant, design and continuation-in-part applications." (emphases added)); MPEP § 201 (8th ed., 5th rev. 2006) ("Domestic national applications include original (nonprovisional), provisional, plant, design, reissue, divisional, and continuation applications (which may be filed under 37 CFR 1.53(b)), continued prosecution applications (CPA) (filed under 37 CFR 1.53(d), only applicable if the application is for a design patent) and continuation-in-part applications (which may be filed under 37 CFR

1.53(b)).” (emphases added)); id. § 201.06(c) (“An application filed under 37 CFR 1.53(b) may be an original, a continuation, a divisional, a continuation-in-part, or a substitute.” (emphases added)).  These inconsistencies in the MPEP itself make clear that the phrase “original application” has no settled meaning in patent law.

Likewise, this court has not used the phrase “original application” consistently either to include or to exclude continuation applications.  Compare, e.g., Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1355 (Fed. Cir. 2007) (“In response to a final obviousness rejection by the Examiner, Pfizer filed a continuation application (serial no. 07/256,938) and abandoned the original application.”), and Omega Eng’g, Inc. v. Raytek Corp., 334 F.3d 1314, 1333-34 (Fed. Cir. 2003) (discussing case in which “two patents issued from continuation-in-part applications derived from one original application”), with Aventis Pharma S.A. v. Amphastar Pharms., Inc., 525 F.3d 1334, 1341 n.6 (Fed. Cir. 2008) (referring to patent that issued from continuation application that had later gone into reissue proceedings and concluding that “the district court was fully aware of the reissue proceeding, yet recognized that any holding of unenforceability in the original application extended to the reissue application” (emphases added)), and In re Yamamoto, 740 F.2d 1569, 1572 (Fed. Cir. 1984) (“The same policies warranting the PTO’s approach to claim interpretation when an original application is involved have been held applicable to reissue proceedings.”).  Patent law commentators similarly have not treated “original application” as having an established meaning.  Compare 1 Irah H. Donner, Patent Prosecution: Law, Practice, and Procedure 82 (2007) (defining “original” in contrast to “continuation,” “continuation-in-part,” “divisional,” and “provisional” applications), with Robert L. Harmon, Patents and the Federal Circuit 1128 (2007)

("Recapture bars a patentee from acquiring, through reissue, claims that are of the same or broader scope than those claims that were canceled from the original application."). We therefore conclude that there is no "settled meaning" of the phrase "original application" that resolves the question at issue in this case.

We next turn to the "traditional tools of statutory construction" to attempt to discern Congress's intent. See Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) (quoting Chevron, 467 U.S. at 843 n.9). "Beyond the statute's text, those 'tools' include the statute's structure, canons of statutory construction, and legislative history." Id. In this case, the district court relied heavily on the structure of the clause in which the phrase "original application" appears. Specifically, the district court reasoned that, because section 4608 makes inter partes reexamination available for "any patent that issues from an original application filed [after November 29, 1999]," the relevant application is the one from which the patent "issues." Cooper, slip op. at 7-8 (emphasis added). Because, according to the district court, a patent "issues from" the final application in the chain—not any parent application—the statute's structure requires that "original application" include continuations. Id. at 8.

We do not think that the structure of the statute compels this reading of "original application," for two reasons. First, there is nothing in the statute's structure that contradicts an interpretation that would allow inter partes reexamination only for patents that result directly from a first filed application filed after November 29, 1999. In other words, there is nothing in the statute's use of the phrase "issues from" that decides the question of or commands a particular determination of the meaning of the word "original."

Second, the phrase "issues from" is itself ambiguous. As the Patent Office correctly points out, this court most commonly refers to a patent as issuing from the final application in the chain—not from a parent application. See, e.g., Invitrogen Corp. v. Clontech Labs., Inc., 429 F.3d 1052, 1057 (Fed. Cir. 2005) ("All three patents issued from continuations of a common parent application."); ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1084 (Fed. Cir. 2003) ("Each of these patents issued from continuation-in-part applications that depend, ultimately, from a common parent application."). But this usage is not universal, and this court has sometimes referred to multiple patents as issuing from a single parent. See, e.g., Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1564 (Fed. Cir. 1997) ("The '431 and '133 patents issued from this [parent] application.") We therefore cannot agree with the district court that the "issues from" language compels a reading of "original application" that either includes or excludes continuation applications.

Turning next to the canon of construction that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation marks omitted), Cooper argues that section 4405 of the AIPA compels a narrow reading of "original application." Section 4405 addresses the effective date for patent term adjustments, and provides that those adjustments "shall apply to any application filed on or after the date that is 6 months after the enactment of this Act." Pub. L. No. 106-113, § 4405, 113 Stat. at 1501A-560 (emphasis added). According to Cooper, "original application" in section 4608 must necessarily have a

more narrow meaning than "any application" in section 4405. But Cooper ignores that, under the Patent Office's construction, an "original application" does not include a reissue application—and, thus, has a more narrow meaning.

Finally, apart from general statements concerning the purpose of the AIPA, neither party points to any legislative history that bears on the meaning of "original application" in section 4608. We likewise are unaware of anything in the legislative history that makes Congress's intended meaning of "original application" clear.

We therefore conclude that Congress has not "directly spoken to the precise question at issue.'" Chevron, 467 U.S. at 842. Accordingly, we turn to step two of the Chevron analysis.

## C. Chevron Step Two

When a phrase is not a defined term in a statute, and when the statutory context does not "provide us any concrete indication of Congress's intended meaning," an "interpretational gap exists regarding a statutory provision." SurAmerica de Aleaciones Laminadas, C.A. v. United States, 966 F.2d 660, 665 (Fed. Cir. 1992). In such circumstances, "we are to examine whether, in its own interpretation of its responsibilities under the Act, the agency charged with the everyday administration of the provision applies 'a permissible construction.'" Id. (quoting Chevron, 467 U.S. at 866). "Our duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by the agency in interpreting and applying the statute." Id.

In this case, the Patent Office expressly interpreted "original application" as used in the AIPA, shortly after the AIPA was enacted. See 65 Fed. Reg. at 76,757. "[T]he Supreme Court has instructed that 'an administrative practice has particular weight

when it involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" <u>Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Machine Workers, AFL-CIO</u>, 6 F.3d 1511, 1522 (Fed. Cir. 1993) (quoting <u>Zenith Radio Corp. v. United States</u>, 437 U.S. 443, 450 (1978) (second alteration in the original)). We therefore must give the Patent Office's construction "particular weight" in our analysis.

Against this backdrop, we conclude that the Patent Office's interpretation of "original application" was permissible. Cooper makes essentially three arguments challenging the reasonableness of the Patent Office's construction. First, Cooper claims that the Patent Office's interpretation would mean that reissue patents—which issue directly from a "reissue application," not an "original application"—could never be subject to inter partes reexamination, even if the original application for the patent were filed <u>after</u> the November 29, 1999 effective date. According to Cooper, a patentee could, therefore, insulate a patent from a future inter partes reexamination by going through the reissue process, even if the original patent would have been subject to inter partes reexamination. Cooper claims that Congress could not have intended such an illogical result. The Patent Office responds by pointing out that its interpretation of section 4608 does not foreclose inter partes reexamination of reissue patents, but simply limits those proceedings to reissues of original applications filed after November 29, 1999. Such reissues are deemed by operation of law to replace the surrendered originals and, thus, are entitled to treatment as original patents. <u>See</u> 35 U.S.C. § 252. We agree that this interpretation is reasonable.

Second, Cooper claims that subjecting a patent that issues from a continuation application to reexamination, when a patent that issued from the parent of that continuation application would not be subject to reexamination, violates 35 U.S.C. § 120. Section 120 provides that:

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. § 120 (emphases added). Cooper argues that, to "have the same effect" as the parent, a continuation application must be exempt from reexamination if the parent would be exempt. Cooper's argument misconstrues section 120. The title of section 120 is "Benefit of earlier filing date in the United States." Id. (emphasis added). The "effect" described in section 120 is the benefit of the earlier filing date—i.e., the benefit for purposes of priority and section 112; the statute itself makes this clear in the clause "or on an application similarity entitled to the benefit of the filing date of the first application." Id. (emphasis added). Nothing in section 120 guarantees that a continuation filed after the effective date of the AIPA will be exempt from inter partes reexamination, just because its parent application is. Contrary to Cooper's claim at oral argument, see Oral Arg. at 37:18-38:15, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1130.mp3, our decision in Transco Products, Inc. v. Performance Contracting, Inc., 38 F.3d 551 (Fed. Cir. 1994), is not to the contrary. Construing section 120 in that case, we held "[i]n essence, 'having the

same effect' means having the benefit of the filing date of the earlier filed application"—i.e., the benefit of priority. Id. at 556.

Third, Cooper argues that the Patent Office's interpretation of "original application" is unfair, because—among other things—it could permit arguments made by third parties in inter partes reexaminations of a patent that issued from a continuation application to affect pending ex parte reexamination of the parent. Balancing the risk of any such cross-contamination against the value of broad access to inter partes reexamination is a quintessentially legislative or regulatory determination of public policy, not an issue for the courts. See SurAmerica, 966 F.2d at 665.

Finally, while we are wary of placing undue emphasis on congressional inaction, we note that Congress's election not to amend the "original application" language when it modified the AIPA in 2002 suggests that it agreed with the Patent Office's interpretation. The Supreme Court has cautioned that "reliance on congressional inaction . . . 'deserve[s] little weight in the interpretive process.'" Alexander v. Sandoval, 532 U.S. 275, 292 (2001) (quoting Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994)). But see San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n, 161 F.3d 1347, 1355 (Fed. Cir. 1998) ("The legislative history shows that Congress was fully aware of the agency regulations and practices at the time of legislating in their area, and absent some special circumstance the failure to change or refer to existing practices is reasonably viewed as ratification thereof.").

In this case, in the Patent Office's notice of its rules interpreting the inter partes reexamination provisions of the AIPA, it expressly set out its interpretation of "original application." 65 Fed. Reg. at 76,757. In that same notice, the Patent Office remarked

that the language in the AIPA that suggested that a patent owner could initiate inter partes reexamination for its own patent was "inadvertently" included as a result of last-minute re-drafting. Id. at 76,765. Congress's 2002 amendments corrected the owner reexamination error identified by the Patent Office, but did not modify the "original application" language. Pub. L. No. 107-273, § 13202, 116 Stat. at 1901. In these circumstances, Congress's election not to amend the "original application" language provides further support for our conclusion that the Patent Office's interpretation was neither unreasonable nor contrary to Congress's intent.

Cooper has suggested that Congress may not have been aware of the Patent Office's interpretation of section 4608. We disagree. The statute that Congress amended dealt specifically with Patent Office procedures, and the Patent Office had previously published its interpretation of that statute in the Federal Register. In these circumstances, we will presume that Congress has knowledge of the Patent Office's interpretation. See Cal. Indus. Prods., Inc. v. United States, 436 F.3d 1341, 1354 (Fed. Cir. 2006) ("Congress is presumed to be aware of pertinent existing law."); United States v. Douglas Aircraft Co., 510 F.2d 1387, 1391-92 (C.C.P.A. 1975) ("It is to be presumed that Congress was familiar with and sanctioned [a] regulation when [it enacted legislation] (without change in the key phrase interpreted by the regulation) . . . ."); see also 44 U.S.C. § 1507 (publication in Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it" and "contents of the Federal Register shall be judicially noticed").

We conclude that the Patent Office's interpretation of section 4608 is permissible and therefore entitled to deference. Under the Patent Office's construction, "original

application" includes continuation applications. The '683 application—from which the '791 patent issued—is therefore an "original application" for purposes of section 4608. Thus, the Patent Office's denial of Cooper's petition to terminate inter partes reexamination proceedings was in accordance with law, and the district court was correct to grant summary judgment in favor of the Patent Office.

## III. CONCLUSION

For the foregoing reasons, we <u>affirm</u> the judgment of the district court.

<u>AFFIRMED</u>